John K. Buche (SBN 239477) (Local Counsel)
BUCHE & ASSOCIATES, P.C.
875 Prospect St., Suite 305
La Jolla, CA 92037
Tel: (858) 459-9111
Fax: (858) 430-2426
jbuche@buchelaw.com

Andrew Rozynski (seeking *pro hac vice*)
EISENBERG & BAUM, LLP
24 Union Square East, PH
New York, NY 10003
Tel: (212) 353-8700
Fax: (917) 591-2875
arozynski@eandblaw.com

*Attorneys for Plaintiff Mark Bax*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| MARK BAX,<br><br>     *Plaintiff*,<br><br> v.<br><br>SUTTER HEALTH, and<br>SUTTER HEALTH MEMORIAL<br>MEDICAL CENTER,<br><br>     *Defendants*. | **Civil Action No.:**<br><br>**COMPLAINT** |

Plaintiff Mark Bax states his Complaint against Defendants Sutter Health and Sutter Health Memorial Medical Center ("Defendants") based upon personal knowledge and information and belief:

## INTRODUCTION

1. This case is about access—access to information and health care services.

1

*Mark Bax v. Sutter Health et al.* – COMPLAINT

As a deaf American, Plaintiff Mark Bax primarily communicates in American Sign Language or "ASL" for short. He requires an ASL interpreter to effectively communicate and participate in a medical setting.

2.     Effective communication between medical providers and patients provides better patient safety, better treatment adherence, and better health care outcomes. Indeed, "it is primarily through language that the physician works to establish rapport and trust. Good physician-patient communication is fundamental to good health care." E. McEwen & H. Anton-Culver, Journal of Family Practice, Vol. 26, No. 3:289–291, 291 (1988).

3.     Between December 2019 and August 2020, Plaintiff visited Defendants' facilities for numerous reasons, including to undergo several serious and potentially life-threatening procedures involving a bypass of his heart and the amputation of his foot.

4.     Plaintiff repeatedly requested ASL interpreters for all of these appointments and procedures to fully understand and participate in his health care.

5.     Defendants consistently failed to provide Plaintiff with an ASL interpreter, preventing Plaintiff from enjoying the same services that a hearing person would.

6.     Without equally effective communication, Plaintiff could not make informed health care choices. Instead, he experienced heightened anxiety throughout his treatment at Defendants' facilities. Defendants' actions and inactions caused him to be anxious because he was afraid of misunderstanding his treatment options. This was especially the case for the serious procedures Plaintiff had to undergo.

7.     Thus, Defendants discriminated against Plaintiff by refusing to provide the ASL interpreters that he required to understand and participate in his health care.

8.     Based on Plaintiff's experience, it is also evident that Defendants have failed to implement policies, procedures, and practices respecting the civil rights and communication needs of deaf individuals. Plaintiff brings this lawsuit to compel Defendants to cease their unlawful discriminatory practices and implement policies and

2

procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity for deaf individuals to participate in and benefit from Defendants' health care services.

9.    Plaintiff brings this action seeking compensatory and punitive damages; declaratory, injunctive, and equitable relief; and attorney's fees and costs to redress Defendants' unlawful discrimination against him on the basis of his disability in violation of Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116; and the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51.

## THE PARTIES

10.    Plaintiff Mark Bax brings this action as an individual residing in Modesto, California. He is a profoundly deaf individual who primarily communicates in American Sign Language. Plaintiff is substantially limited in the major life activities of hearing and speaking and is an individual with a disability within the meaning of state and federal civil rights laws.

11.    Upon information and belief, defendant Sutter Health is a not-for-profit corporation doing business in the State of California. Upon information and belief, Sutter Health is the parent company of defendant Sutter Health Memorial Medical Center.

12.    Upon information and belief, defendant Sutter Health Memorial Medical Center is a not-for-profit corporation doing business in the State of California in the County of Stanislaus at 1700 Coffee Road, Modesto, California 95355.

13.    Upon information and belief, Defendants are places of public accommodation under federal and state antidiscrimination laws and receive federal financial assistance, including Medicare and Medicaid reimbursements.

## JURISDICTION & VENUE

14.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under the laws of the United States

*Mark Bax v. Sutter Health et al.* – COMPLAINT

and supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's state law claims.

15.    Venue is proper in this district under 28 U.S.C. § 1391(b) because (i) Defendants are residents of this District, (ii) Defendants have sufficient contacts with this District to subject them to personal jurisdiction and had those contacts at the time this action is commenced, and (iii) the majority of the acts and omissions giving rise to this Complaint occurred within this District.

**STATEMENT OF FACTS**

16.    Plaintiff is a profoundly deaf individual who communicates primarily in American Sign Language. He cannot effectively communicate by reading a person's lips.

17.    Some background on Deaf[1] culture is necessary to understand the balance of this case. American Sign Language, "the sixth most commonly used language in this country," is not a gestured form of English. "ASL is a mix of native signs and French sign language. Some words are finger-spelled, borrowed from English the same way that the words gourmet, roulette, and taco are borrowed from French and Spanish." And the native signs derive from "hand shape, palm direction, placement of the hand on the body or within the signing space, movement, and non-manuals (facial expressions)." D. Scheier, Barriers to Health Care for People with Hearing Loss: A Review of Literature, Journal of the New York State Nurses Association at 6 (internal citations omitted).

18.    Unfortunately, "many physicians are reportedly unaware of Deaf culture and the health needs of deaf people. This may lead to assumptions and misconceptions about deafness that undermine professional health care. For example, practitioners often believe that lip reading/speech reading and note writing provide effective health communication.

---

[1] "[T]he word deaf is written with either an uppercase or lower-case 'D.' When referring to the audiological condition of deafened people, deaf is written with a lower-case 'd.' An uppercase 'D' is used when writing about the Deaf culture, a group with which many prelingually deaf people affiliate themselves." D. Scheier, Barriers to Health Care for People with Hearing Loss: A Review of Literature, Journal of the New York State Nurses Association at 4.

4

*Mark Bax v. Sutter Health et al.* – COMPLAINT

In reality, these are ineffective communication modalities for health care conversations. Deaf people who have practiced lip-reading/speech-reading for many years and who are familiar with spoken language are able to understand at best 30-45% of spoken English. Furthermore, note-writing is often constrained by deficits in health literacy and limited 'fund of information' deficits." A. Kuenburg, P. Fellinger, & J. Fellinger, Health Care Access Among Deaf People, Journal of Deaf Studies and Deaf Education, 2016, Vol. 21, No. 1:1–10, 2 (internal citations omitted).

19.    In short, Defendants failed to provide Plaintiff with equally effective communication under state and federal law.

20.    Between December 21, 2019 and January 6, 2020, Plaintiff was admitted to defendant Sutter Health Memorial Medical Center ("SHM") for a femoral bypass procedure.

21.    SHM refused Plaintiff's requests for in-person interpretive services until the very end of his two-week long visit.

22.    Instead, SHM staff and medical personnel at first attempted to communicate with Plaintiff through a combination of gesturing, leading him by his hand, and lipreading.

23.    Lipreading in English is not an effective means of communication for Plaintiff. Plaintiff's primary method of communication is American Sign Language.

24.    Plaintiff's inability to effectively communicate by lipreading is exacerbated by the fact that Defendants' staff wore facemasks due to the COVID-19 pandemic at all relevant times. In any event, lipreading is not an effective means to communicate complex medical information, especially given the serious nature of Plaintiff's health issues.

25.    Indeed, due to communication issues, SHM staff nearly performed surgery on Plaintiff's heart by mistake.

*Mark Bax v. Sutter Health et al.* – COMPLAINT

26. Plaintiff also made clear that he did not want SHM staff to lead him around the hospital by his hand in lieu of actual communication.

27. After Plaintiff repeatedly explained that he is deaf, could not understand what was being communicated to him in verbal English, and did not want to be grabbed and led around the hospital, SHM staff attempted to use video remote interpreting ("VRI") equipment to communicate with him. VRI is "an interpreting service that [should] use[] video conference technology over dedicated lines or wireless technology offering high-speed, wide-bandwidth video connection that delivers high-quality video images." 28 C.F.R. § 36.104.

28. This use of VRI proved equally ineffective, as the VRI kept freezing and Plaintiff would be unable to see the interpreter. Moreover, due to the apparently limited quantity of VRI equipment at SHM, staff kept taking the VRI machine away from Plaintiff because there was another patient who needed it. Plaintiff rarely had access to the VRI, and only for short periods of time.

29. SHM staff also attempted to communicate through Plaintiff's deaf friend and companion by lipreading, which was equally ineffective.

30. In early March 2020, Plaintiff visited SHM to have a catheter inserted and discuss the potential amputation of his right foot due to ongoing health issues.

31. Between June 1 and June 10, 2020, Plaintiff was again admitted to SHM to have his foot amputated.

32. During this time, SHM staff, including Plaintiff's surgeon, Dr. William Whang, refused all of Plaintiff's requests for a live interpreter.

33. Instead, and despite Plaintiff's protests, SHM staff again demanded that Plaintiff use VRI. For the same reasons as listed above, the use of VRI was ineffective. The service kept freezing, and Defendants' staff kept taking the VRI equipment away from Plaintiff.

6

34. Eventually, the parties had no choice but to attempt to use Plaintiff's friend to interpret, even though his friend is also deaf and Plaintiff did not want to use him to interpret.

35. In addition to the above procedures, Plaintiff had numerous appointments with the following individuals and entities at Sutter Health facilities:

a. Jeffrey Lind Brayshaw, PA at Sutter Health's Briggsmore Specialty Center in Modesto on January 31, 2020;

b. Sutter Medical Foundation laboratories, an affiliate or subsidiary of defendant Sutter Health, on April 15 and May 8, 2020.

c. Gauhar R. Khan, MD in Modesto on May 1, 2020;

d. David R Boone, PA through video on June 24 and July 1, 2020; and

e. William W. Whang, MD in Modesto on August 10, 2020.

36. Defendants and their staff knew that Plaintiff is deaf and were aware that he made repeated requests for ASL interpreters.

37. Regardless, at these additional Sutter Health providers and appointments, Defendants repeatedly failed to provide the auxiliary aids Plaintiff required to understand and participate in his health care.

38. At times, Plaintiff was provided no interpretive services whatsoever. At other times, Defendants used VRI that either malfunctioned or failed to display an ASL interpreter, and was infrequently provided to Plaintiff for very short periods of time.

39. Upon information and belief, Defendants and their employees follow the recommendations and regulations by the Joint Commission.

40. Upon information and belief, Defendants and their employees follow the recommendations for effective communication in the Joint Commission's Advancing Effective Communication, Cultural Competence, and Patient- and Family-Centered Care: A Roadmap for Hospitals, https://bit.ly/3usVEEh ("A Roadmap for Hospitals").

*Mark Bax v. Sutter Health et al.* – COMPLAINT

41.    Consistent with the Joint Commission's guidance, Defendants have a responsibility to "develop a system to provide language services to address the communication needs of patients whose preferred language is not English, including patients who communicate through sign language." A Roadmap for Hospitals at page 40, https://bit.ly/3usVEEh.

42.    Defendants have a responsibility to identify a "patient's preferred language for discussing health care." A Roadmap for Hospitals at page 10, https://bit.ly/3usVEEh.

43.    If necessary to determine a patient's preferred language, Defendants should "[a]rrange for language services to help identify the patient's preferred language," and once the preferred language is identified, Defendants should "[n]ote the patient's preferred language for health care discussions in the medical record and communicate this information to staff." A Roadmap for Hospitals at page 10, https://bit.ly/3usVEEh.

44.    The Joint Commission requires hospitals like Defendants to "[p]rovide an interpreter for the patient's preferred language during informed consent discussions, even if the hospital provides translated materials, to facilitate patient communication." A Roadmap for Hospitals at page 20, https://bit.ly/3usVEEh.

45.    As advised by the Joint Commission, Defendants are aware that "[e]xchanging written notes . . . will likely be effective communication for brief and relatively simple face-to-face conversations." A Roadmap for Hospitals at page 69, https://bit.ly/3usVEEh.

46.    Similarly, Defendants are aware that "[w]ritten forms or information sheets may provide effective communication in situations with little call for interactive communication, such as providing billing and insurance information or filling out admission forms and medical history inquiries." A Roadmap for Hospitals at page 69, https://bit.ly/3usVEEh.

47.    In most instances, effective communication could not have taken place

8

*Mark Bax v. Sutter Health et al.* – COMPLAINT

between Plaintiff and Defendants' staff without an ASL interpreter.

48.   Overall, Defendants' discrimination against Plaintiff caused him to emotional distress, including stress, anxiety, and frustration.

49.   Defendants knew or should have known of their obligations as health care providers under state and federal antidiscrimination laws to develop policies to promote compliance with these statutes and to provide reasonable accommodations, including the provision of ASL interpreters to ensure effective communication with deaf individuals.

50.   Defendants and their staff knew or should have known that their actions and inactions created an unreasonable risk of causing Plaintiff greater levels of emotional distress than a hearing person would be expected to experience.

51.   Nevertheless, Defendants prevented Plaintiff from benefitting from their services by failing to provide the ASL interpreters necessary for him to effectively communicate and participate in a health care setting.

52.   In doing so, Defendants intentionally discriminated against Plaintiff and acted with deliberate indifference to his federally protected rights.

53.   Defendants' wrongful and intentional discrimination against Plaintiff on the basis of his disability is reflected by Defendants' failure to train employees and promulgate policies of non-discrimination against deaf individuals.

54.   As a result of Defendants' failure to ensure effective communication with Plaintiff, he received services that were objectively substandard and that were inferior to those provided to patients who are hearing.

55.   Plaintiff is entitled to equal access to services offered by Defendants as are enjoyed by non-disabled persons.

## CAUSES OF ACTION

### CLAIM I: Violations of the Patient Protection and Affordable Care Act

56.   Plaintiff incorporates by reference all preceding paragraphs and realleges

9

them in support of this claim.

57.    At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act has been in full force and effect and has applied to Defendants' conduct.

58.    At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking and has been an individual with a disability within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

59.    At all times relevant to this action, Defendants received federal financial assistance, including Medicare and Medicaid reimbursements, and has been principally engaged in the business of providing health care. Thus, Defendants are health programs or activities receiving federal financial assistance under 42 U.S.C. § 18116(a).

60.    Under Section 1557 of the Patient Protection and Affordable Care Act, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

61.    Federal regulations implementing the ACA provide that a covered entity "shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in such programs or activities, in accordance with the standards found at 28 CFR 35.160 through 35.164." 45 C.F.R. § 92.102(a).

62.    Accordingly, federal regulations implementing the ACA also provide that a "[covered] entity shall furnish appropriate auxiliary aids and services when necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a

10

*Mark Bax v. Sutter Health et al.* – COMPLAINT

service, program, or activity of a [covered] entity. . . . In determining what types of auxiliary aids and services are necessary, a [covered] entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F.R. § 35.160(b), *cited by* 45 C.F.R. § 92.102(a).

63.    Federal regulations implementing the ACA further require that a covered entity that provides individuals with disabilities "qualified interpreters via VRI services shall ensure that it provides–(1) Real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; (2) A sharply delineated image that is large enough to display the interpreter's face, arms, hands, and fingers, and the participating individual's face, arms, hands, and fingers, regardless of his or her body position; (3) A clear, audible transmission of voices; and (4) Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI." 28 C.F.R. § 35.160 (*cited by* 28 C.F.R. §§ 35.104 & 36.303(f); in turn *cited by* 45 C.F.R. § 92.102(b)(1)(i)).

64.    During Plaintiff's visits to Defendants' facilities before August 2020, federal regulations implementing the ACA provided that (1) a "covered entity shall offer a qualified interpreter to an individual with limited English proficiency when oral interpretation is a reasonable step to provide meaningful access for that individual with limited English proficiency" and (2) a "covered entity shall use a qualified translator when translating written content in paper or electronic form." 45 C.F.R. § 92.201(d)(1)–(2).

65.    Since August 2020, federal regulations implementing the ACA similarly

11

provide that a covered entity "shall take reasonable steps to ensure meaningful access to such programs or activities by limited English proficient individuals," 45 C.F.R. § 92.101(a), and that where an individual "requires the provision of language assistance services, such services must be provided free of charge, be accurate and timely, and protect the privacy and independence of the individual with limited English proficiency. Language assistance services may include: (i) Oral language assistance, including interpretation in non-English languages provided in-person or remotely by a qualified interpreter for an individual with limited English proficiency, and the use of qualified bilingual or multilingual staff to communicate directly with individuals with limited English proficiency; and (ii) Written translation, performed by a qualified translator, of written content in paper or electronic form into languages other than English." 45 C.F.R. § 92.101(b)(2)(i)–( iv).

66.    At all times relevant to this action, Plaintiff's primary language for communication has been ASL, and he has a limited ability to read, write, speak, or understand English. Plaintiff is thus also an individual with limited English proficiency within the meaning of the ACA.

67.    Indeed, the ACA regulations governing individuals with disabilities and individuals with limited English proficiency contain virtually identical definitions, prohibitions, and requirements. For example, compare 45 C.F.R. § 92.102(b)(2)(i)–(iii) regarding the provision of interpreters to individuals with disabilities:

> When an entity is required to provide an interpreter . . . the interpreting service shall be provided to individuals free of charge and in a timely manner, via a remote interpreting service or an onsite appearance, by an interpreter who
>
> (i)    Adheres to generally accepted interpreter ethics principles, including client confidentiality; and
>
> (ii)    Is able to interpret effectively, accurately, and

12

*Mark Bax v. Sutter Health et al.*  – COMPLAINT

impartially, both receptively and expressively, using any necessary specialized vocabulary, terminology and phraseology;

with 45 C.F.R. § 92.101(b)(3)(i)(A)–(C) regarding the provision of interpreters with limited English proficiency:

> [Interpreter services] must be provided by an interpreter who:
>
> (A)    Adheres to generally accepted interpreter ethics principles, including client confidentiality;
>
> (B)    Has demonstrated proficiency in speaking and understanding at least spoken English and the spoken language in need of interpretation; and
>
> (C)    Is able to interpret effectively, accurately, and impartially, both receptively and expressly, to and from such language(s) and English, using any necessary specialized vocabulary, terminology and phraseology.

68.    "In those circumstances where personnel of the [covered] entity believe that the proposed action would fundamentally alter the service, program, or activity or would result in undue financial and administrative burdens, a [covered] entity has the burden of proving that compliance with this subpart would result in such alteration or burdens." 28 C.F.R. § 35.164, *cited by* 45 C.F.R. § 92.102(a).

69.    As set forth above, Defendants discriminated against Plaintiff on the basis of his disability in violation of the ACA and its implementing regulations.

70.    The ACA, by incorporating the enforcement mechanism of the Rehabilitation Act, extends a cause of action to Plaintiff—that is, "any person aggrieved" by discrimination in violation of the Rehabilitation Act. 42 U.S.C. § 18116(a).

71.    Defendants have failed to implement policies, procedures, and training of staff necessary to ensure compliance with the ACA.

13

*Mark Bax v. Sutter Health et al.* – COMPLAINT

72.    Plaintiff is entitled to injunctive relief; attorney's fees, costs, and disbursements; and compensatory damages for the injuries and loss he sustained as a result of Defendants' discriminatory conduct and deliberate indifference as alleged under 42 U.S.C. § 18116(a).

## CLAIM II: Violations of the Unruh Act

73.    Plaintiff incorporates by reference all preceding paragraphs and realleges them in support of this claim.

74.    The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

75.    The Unruh Act further provides that "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section." Cal. Civ. Code § 51(f); *see also* 28 C.F.R. §§ 35.160(b) & 35.164.

76.    Defendants violated the Unruh Act by discriminating against Plaintiff through violations of the ADA.

77.    Defendants have failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Unruh Act.

78.    Plaintiff is entitled to injunctive relief; attorney's fees, costs, and disbursements; and compensatory damages for the injuries and losses he sustained as a result of Defendants' discriminatory conduct pursuant to Cal. Civ. Code § 52.

*Mark Bax v. Sutter Health et al.*  – COMPLAINT

79.    Plaintiff is further entitled to seek and recover exemplary damages to rectify and deter Defendants' discriminatory conduct as hereinbefore alleged, pursuant to Cal. Civ. Code § 52.

### **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that the Court:

A.    Enter a declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Section 1557 of the Patient Protection and Affordable Care Act and the Unruh Act;

B.    Issue an injunction forbidding Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals or their companions, meaningful access to and full and equal enjoyment of Defendants' facilities, services, or programs;

C.    Issue an injunction ordering Defendants:

    i.    to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an in-person interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendants;

    ii.    to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly marked and worded notices that Defendants will provide sign language interpreters, videophones, and

*Mark Bax v. Sutter Health et al.*  – COMPLAINT

other communication services to ensure effective communication with deaf or hard of hearing persons;

iii.   to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances, recognizing that the Video Remote Interpreting System is not appropriate in all medical situations;

iv.   to develop, implement, promulgate, and comply with a policy to ensure, in the event Defendants use a Video Remote Interpreting System that has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

v.   to train all their employees, staffs, and other agents on a regular basis about how to properly use a Video Remote Interpreting System, including how to set it up and how to obtain technical assistance in case of system malfunction or failure, and how to obtain interpreters when reasonably requested by deaf or hard of hearing individuals;

vi.   to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

vii.   to train all employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ACA and the Unruh Act.

D.   Award to Plaintiff:

16

*Mark Bax v. Sutter Health et al.*  – COMPLAINT

 i. Compensatory damages under the ACA and Unruh Act;

 ii. Statutory or exemplary damages under the Unruh Act;

 iii. Reasonable costs and attorney's fees under the ACA and Unruh Act;

 iv. Nominal damages;

 v. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

 vi. Any and all other relief that this Court finds necessary and appropriate.

Dated: June 29, 2021     Respectfully submitted,

             BUCHE & ASSOCIATES, P.C.

             /s/ John K. Buche
             John K. Buche (SBN 239477) (Local Counsel)
             875 Prospect St., Suite 305
             La Jolla, CA 92037
             Tel: (858) 459-9111
             Fax: (858) 430-2426
             jbuche@buchelaw.com

             EISENBERG & BAUM, LLP

             Andrew Rozynski (seeking *pro hac vice*)
             24 Union Square East, PH
             New York, NY 10003
             Tel: (212) 353-8700
             Fax: (917) 592-2875
             arozynski@eandblaw.com

             *Attorneys for Plaintiff Mark Bax*

*Mark Bax v. Sutter Health et al.* – COMPLAINT